May I reserve two minutes? Yes, of course, but again, watch your time. Sure. Edgar Page for Mr. Hieng. And I'd like to focus my argument on the confrontation rights. Yes, the government does have to call the translator, and I would refer the court to Melendez-Diaz, 129, Supreme Court, 2527 at 2534. The text of the amendment contemplates two classes of witnesses, those against the defendant and those in favor, those in his favor. The prosecution must produce the former. The defendant may call the later. When the prosecution. It's also waivable, right? I'm sorry, ma'am? Is it waivable? Is it waivable? Certainly, the discussion in those lab cases suggests it is, right? I think any constitutional right is waivable, I think, Your Honor. Well, the question is, did you waive it? I mean, there's this whole peculiar colloquy at the beginning of this here where the lawyer seemed to be – I don't know, were you a lawyer in the district court? Yes, Your Honor. Well, you seem to be more concerned about the fact that they were going to put him on than saying that they should put him on. Are you referring to our – my case? Yes, your case. Okay. That happened on the day one at 9 – RT 9-312. And it was the interpreter that actually kind of raised the issue first because they were going to exclude the witnesses from the courtroom. And I believe that the – it's actually the strong ruling by the district court on page 12 where the court says, this is what the court sees is implicated by the status, in other words, the interpreter. The interpreter is obviously not a recipient or a fact witness to any of the events. This rather goes to his job as an interpreter and the accuracy of his translation of an interview. So it's the district court itself that stops any further conversation or disagreement about whether the translator should be called. And it's the government who is arguing that the statements that are made are not – are inconsistent. And so – and it's a very important point that their government is pursuing because this is a case about knowledge. It's a case about whether Mr. Hing had knowledge of the presence of the marijuana. And there were two senses that could be questioned, and that was sight and smell. And so the defense attorney brought a tremendous amount of evidence about sight. And this colloquy that they're arguing about or that is trying to be pursued is Mr. Hing – this is on page – this is part of the trial, and I'm referring to pages 655 to 656. Mr. Hing is on the stand now, and the government is pursuing this inquiry. And he says, well, I never gave that kind of an answer. I was asked like the questions you're asking me right now. Did you see anything? And I said, I didn't see anything. And I was asked, did you smell anything? And I said, I never smelled anything. And the government asked, well, when you were asked why you didn't smell the marijuana, you told the special agent, Koongles, small plants don't have any odor. And he answers, I never said anything like that. And this is where – this is – if it had just been him and he speaks English and he said it to the officer and the officer contradicts him, we don't have a confrontation right. But the interpreter acknowledges early on in the page that you referred to that he or she, I think it was he, had been subpoenaed. So apparently he was available. He was in the courtroom translating for the court, and there was this colloquy about whether he could both serve as a translator if he was later on to be called as a witness. So he had been subpoenaed by the government. Did anybody say at that point, we are going to need to have the translator testify? Yes. The government says on page 11 of Day 1, and depending on Mr. Heen's testimony, if I would need to impeach him with a prior inconsistent statement, then I would be asking to rather than having Mr. Lim testify to the statement because he was the one that took it in the Cambodian language, the officer be allowed to testify and we could put on a stipulation on the record that Mr. Heen was utilizing an interpreter and the interpreter interpreted what Mr. Heen said into English and then that was noted by the officer. It's after that that the court then rules that the interpreter is not a he's not a precipitate witness, he's not a fact witness. But we could have him interpreted here who would be able to verify the accuracy of the translation if there's any issue on it. All right. So and he says this goes to his job as an interpreter and the accuracy of his translation of an interview. But the. That is what you'd want to cross-examine him about. You couldn't cross-examine him. What the judge said is accurate, right? He wasn't a precipitate witness except to the interview. In fact, the real concern that Mr. Drandall expressed was that he wasn't so concerned as to with the accuracy of the translation as he was to the accuracy of the English transcription by the officers who were listening to the translator. But as to that, he had every opportunity to cross-examine them. We need to draw. There's a line that we're crossing and that I want to just clarify. I don't disagree with you about after the court. This Court has made a ruling, and so it would be futile to argue with the district court at this point the way this Court's making this ruling. What ruling did it make? Excuse me, Your Honor? What ruling did it make? When the Court says that he's not a precipitate witness or a fact witness. And that is a line that we're crossing because words are being spoken in English to an individual. That individual is then changing the ---- And the judge perfectly well recognized that and says you can have him here to testify about that. But he is a ---- he does then become he is a ---- that translator is not a conduit, which is what the argument is, what the government is arguing. And what the court is ruling, and the court does, that's the line of cases that the court is pursuing. Why is he not a conduit? He's not a conduit because words are being, they're being filtered through this individual. And so ---- Okay. That would suggest then that Nazemian is wrong, right? Because we have said this is independent of whatever rights he has under the confrontation clause, that under the hearsay clause, that this is, that this can be admitted as reliable evidence because they are a conduit. Nazemian is based on Roberts. Roberts was overruled because of this is a, this is not a ---- Ohio v. Roberts. I'm not sure it was, it was not a confrontation clause case as such. Neither am I, Your Honor. I do know, though, that ---- I'm having a problem with. Okay. Okay. Let's assume that the confrontation clause does apply to the, to the question whether, in fact, Santa Cruz said to the translator, and the translator said to Agent Hing, what Agent Hing is testifying to. And so therefore, the government does have to produce the translator to testify to that, to the degree he can testify to it. But, but here, so it appears that the only difference here between what you're saying now and what the government said is whether the government, and what the Court said is whether the government had to put him on versus had to have him in the courtroom if you wanted to challenge the translation and put him on. The government is the proponent. They have the burden. So your position is that having him in the courtroom wasn't good enough, that government had to put him on. But the question is, then, did you ever complain about that? I mean, it seems like there's something pretty close to an agreement, at least a tacit agreement here, that it was okay to, or at least that's my question, to proceed the way the judge suggested. The judge didn't say that it, he didn't have to testify to that. He just sort of suggested a way to do it. And you're saying, no, you can't do it that way. It has to be, the government has to put him on. Well, the government, the Court actually says that the, he shifts it over to the defense. If you don't agree with the translation, you can call, you, defense, can call the interpreter. And what the Confrontation Clause says is a witness against the, against, against him, the Sixth Amendment, this is Melinda Diaz again, the Sixth Amendment guarantees a defendant the right, quote, to be confronted with the witnesses against him. Now, that's the question here. Is the witness against him the officer who really is transcribing? He's really taking, he's almost like somebody who's taking a deposition. Now into red time. So if you want to reserve any time, you should do it. Thank you, Your Honor. Thank you very much. Good morning. My name is Laurel Montoya, and I'm an assistant United States attorney, and I was a trial attorney in this matter. It's the government's position that the use of an interpreter under these circumstances does not trigger the Confrontation Clause. And the reason I say that is because the Confrontation Clause would not bar the testimony if this was an English-speaking defendant, but because a interpreter, a translator, was used, that doesn't necessarily raise it to the level where it then becomes hearsay where the Confrontation Clause is. It doesn't have to be hearsay. Well, my understanding, and perhaps I read Crawford wrong, was that it applies to testimonial hearsay. And because this would be a testimonial statement when there's not a – when the person is not unavailable and had been cross-examined recently, previously, and it completely cut the link to hearsay. But in this situation, because I don't think that there's a bar of putting on the defendant's statement, if the defendant was, in fact, an English-speaking defendant. But we all know that there are all kinds of – I mean, how is this different than the lab report? That's what I'd like to know. How I characterize this in reading the Melendez-Diaz case in relation to the other cases that were presented is because with a lab report, you have, especially in the Melendez-Diaz case, you had evidence other than what was strictly presented by the machine. There was information concerning the fact that a person is a machine and a language isn't a machine. And we all know that there are five translations of War and Peace, which are very, very different, and which could lead to different conclusions if the person was a witness on a stand. Correct. However, it's my position that when the interpreter is presenting the information or translating the information to the agent who is then the note-taker and who would be the ultimate witness, because it is the – But the note-taker has no idea whether, in fact, Santa Cruz said what the translator said he said. Only the translator knows that. That's correct. And then if the – if the factors set forth in the Zemian are satisfied, then that should be sufficient to take it out of the Confrontation Clause arena, in that this now becomes the defendant is the declarant rather than the interpreter, and the agent is then relaying the information that the defendant gave during the course of the hearing, and therefore, there would not be a Confrontation Clause issue, because there – the language – But Crawford says very specifically that the Constitution sets up a way of testing that, which is not for the judge to decide whether this person is a good or a bad translator, but – i.e., reporter of what Santa Cruz said, but rather to have the cross-examination available. And you're suggesting that you can substitute another way, which is to have the judge decide a bunch – look at a bunch of factors and decide whether this is a good translator or a good translation. That's essentially what you're saying. True. And if those – because if the Zemian survives, which is the government's position, it does survive Crawford, then once those factors are satisfied, then the cross-examination would then be to the agent, and the agent's note-taking abilities, which has already been pointed out, the problem that you have or the issues that you have whenever there's a statement that's presented in court with a defendant's statement where the agent is testifying as to what the defendant said. In regards to the interpreter being a strict conduit, I think that the circumstances of this particular case were satisfied, and the Nazemian factors were satisfied such that, again, the translator was a conduit, and the witness that's being cross-examined and should be cross-examined under these circumstances is, in fact, the agent who was present, who took the statement, and who is then reporting to the court, and he can be cross-examined on behalf – on the contents of the note. But just to use an example, here there was a pretty fine-cut difference, as I understand it, between whether the defendant said, I wouldn't have done this for any amount of money, or whether he said, I would have done it for more money. I wouldn't have – I would only have watched the marijuana for more money. Right? And that's a – I mean, if you think about the language difference, it's a pretty fine-cut distinction as to language. Why aren't they willing to have the right to test to cross-examine the interpreter as to exactly what he said by using Cambodian words and saying, did he say this or did he say that, or what words did he say? And he might say, I don't know, in which case that would have some – some value. And going back to the questions asked of Mr. Page, the interpreter was, in fact, present, and the interpreter could have been cross-examined, and the court made it – I felt made it clear. Had the government said he needed it? The interpreter could be cross-examined, but it wouldn't have anything to do with what the actual statement said. All you could do is cross-examine the interpreter as to his or her ability to be – to translate. Correct, and I think that that's the issue. Well, that's – we have – we have in the past, there's no question about it, used this conduit theory. But the question is, really, is, does Crawford now tell us we have to do something different? That is, we can. We can just record everything that happens vocally, and defense can then have their own translator indicate whether or not the translation is right, and then we could determine whether or not that's really of significance. There are ways around this. It isn't the end of the world. But I think the question, before we decide whether there's the end of the world or not, is whether or not Crawford requires us to do away with the conduit theory. And I think that's the issue that you have to tell us. What is there about Crawford that you believe allows the conduit theory to survive? I think that taking Crawford in conjunction with Nazemian and getting back to the factors – because I – my position is those factors are very important, and that if a conduit – or if these factors are shown, then a strict conduit is not a witness who is then testifying to something that the witness is putting their own spin on. Or like in the lab, the analyst, the notations about how the sample came in and that sort of thing, that is something that the analyst is observing and is making note of and writing down versus just parroting back, which is what the conduit does. The conduit takes the information from the defendant. The conduit then reports that information to the agent, and so there's not a spin that's put on it. But we've all had experience, I suppose, if we've done trials of these cases, that sometimes interpreters make mistakes. So the assumption that it parrots is one that does not show up. And so that's the question, if there is not a perfect translation, you have to assume there is in order to say that Crawford automatically doesn't apply because there's this conduit that automatically takes the meaning of the person and gives it to the police officer. Now, I'm not having made up my mind on the case, but it seems to me the burden the government has in this case is whether or not you can really say that the translation was accurate. And we have testimony that says, no, it wasn't accurate. I never said that. So what do we do with that? Well, I think the testimony was, you know, I went back and re-read it in preparation for this, and I wish that I would have followed up more and fleshed out, did you not say it, what did you mean, that sort of thing. But that wasn't done. And so I didn't think that the record or what the defendant said was all that clear as to this was an imperfect translation. And that was the first time that this was brought to you. Well, you said I didn't say it. It could have been it wasn't written down by the agent, right, or it wasn't translated right, but he said he didn't say it, and there were two possibilities. Why didn't you have to put on both halves of that, not just part of it? But then I see the situation where, as in the Santa Cruz case, where the interpreter would then be questioned, and the interpreter ---- Well, fine. Then the defense at least has something, i.e., you know, they didn't even prove he said this. The translator didn't remember anything. And again, in this situation, luckily, the interpreter was the trial interpreter and was available for cross-examination, and at that point ---- Can I ask a logistic question? You didn't brief this. You acted as if Swarfer didn't exist, which is a very peculiar thing to have done. And it's a ---- it seems to me a very large question. If we ask for supplemental briefs and ask for you to consult with the Department of Justice and to write a serious analytical brief about this, would that be a better way to proceed, given the fact that we have, you know, we're doing this on the fly at this point? I would rather have that done than to have ---- But not more of the same. It would have to be a serious analytical piece about Crawford and in lab cases and how they ---- it all applies to this, not a bunch of assertions that Masnienian just survives. And do you think you could get that produced if we asked for it? Yes. Okay. Thank you very much. Thank you. I would certainly welcome supplemental briefing if the Court would like. I do believe that this is a ---- Masnienian is a ---- there was no dispute about the translation in Masnienian from my record when I was reviewing my notes. There was a dispute. It was 10 years before Crawford's, when excluding it from the ---- from the hearsay clause was good enough, from the hearsay was good enough. Certainly. I mean, Ohio v. Robertson was the case at that time. When this case went to trial, Crawford had been decided. And so if the Court would like, I would welcome further briefing. I do believe, though, that his confrontation rights were harmed in this case particularly. Okay. Thank you very much. Thank both of you. And we will let you know how to decide to proceed. The case of United States v. Hing has submitted, and we are in recess for the morning. Thank you very much.
judges: Wallace, Berzon, Bybee, Cjj